### Louis H. Kohn v. Jacob Miller et.al.

1. RATIFICATION—*Power to Purchase Implies Authority to Ratify.*— A trustee who is invested with power to purchase has power to ratify a purchase previously made by another, and his ratification will relate back and operate, in law, as a prior authority.

Assumpsit, for goods sold, etc. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed October term, 1901.

FLOWER, VROMAN & MUSGRAVE, attorneys for appellant.

NEWMAN, NORTHRUP & LEVINSON, attorneys for appellees.

MR. JUSTICE ADAMS delivered the opinion of the court.

The appellees sued appellant, in assumpsit, for the amount of two bills of goods shipped by them to Stein & Brodeck, a firm composed of Albert Stein and Albert A. Brodeck, doing business in Everett, in the State of Washington. The first bill was shipped July 15, 1895, amounting to $129, and the other September 10, 1895, amounting to $491. That the goods were shipped and their value as above stated, and that they have not been paid for, are uncontroverted facts. The only contested question is as to the liability of appellant. The cause was submitted to the court for trial, and the court found the issues for the plaintiffs and assessed the plaintiffs' damages at the sum of $756.03, and judgment was rendered on the finding.

It appears from the evidence that Stein & Brodeck failed in business and that they had executed to Charles Stein, father of Albert Stein, a chattel mortgage on their stock

of goods; that prior to December, 1893, Charles Stein took possession of the stock under the chattel mortgage; that subsequently the creditors of Stein & Brodeck, not including appellees, had a meeting in Chicago, and an arrangement was made by which Charles Stein released his mortgage, and he and Louis H. Kohn were appointed trustees for the creditors. By the arrangement the business of Stein & Brodeck was to be superintended by Charles Stein, at Everett, and goods sufficient to replenish the stock of the firm were to be purchased, but no order for goods were to take effect, or the goods to be shipped, without the approval of appellant, who resided in Chicago. All money received on sales, above expenses, including compensation to Stein & Brodeck, who were to act as clerks, was to be sent to Chicago to appellant. Charles Stein continued to be trustee up to July, 1894, when, as the evidence tends to show, one Taylor became trustee in his place. There is no evidence that Taylor ever did anything as trustee.

The suit was brought against Kohn and Charles Stein, but Stein having ceased to be trustee when the bills in question were contracted, the suit was dismissed against him, and the declaration was amended accordingly.

In a letter from appellant to appellee, of date December 23, 1893, the following occurs:

" Creditors here, whom Stein & Brodeck owed $9,400, had Charles Stein release his mortgage and place affairs in the hands of myself and Charles Stein, as trustees for creditors. The goods at the other store, a few goods to replenish their stock, were to be bought as they did business. Trade has not been very brisk there, and you can be well satisfied that you get your money so early. Herewith check $178.60. Please receipt in full for bill to me here." Signed, " Louis H. Kohn, trustee."

The following letters passed between the parties:

"Chicago, January 6, 1894.
Messrs. Jacob Miller, Son & Co., Philadelphia, Pa.

Gentlemen: Your favor of the 26th sent to Stein & Brodeck, was forwarded here. This business is in the hands of Charles Stein and L. H. Kohn, trustees. They expect by the first of February to have paid all their new bills

contracted for the fall, and to start paying on the old accounts. The new bills contracted for are to be paid before any of the old bills are paid, so that after you ship these goods your claim, as well as those of the other parties who are willing to continue business under this style, will be paid first. You are not taking any risk, but your account is as good as if it was against the best firm you have on your books. If you should not desire to do any business with them, please advise us here so that we can inform them. So far as the risk is concerned, you are not taking any chances at all. Would thank you to advise what your position is, so we can notify them, if they did not buy your goods, to buy those of some other firm.

Yours truly,

L. H. Kohn."

"November 26.

Mr. Louis H. Kohn, care Messrs. Ederheimer, Stein & Co., Chicago, Ill.

Dear Sir: We are to-day in receipt from Messrs. Stein & Brodeck, Everett, Wash., for spring shipment, clothing amounting to $786.75 and shirts $506.50. In receiving the same it reminds us that we had the expression from Messrs. Stein & Brodeck that their fall bill of July 19th as October 1, $129, Sept. as Nov. 1, $491, that the same should be discounted. Accordingly, we did send you in due time a statement of this account. Kindly take notice of the same and give us your expression by return mail, and oblige.

Yours respectfully,

Jacob Miller, Sons & Co."

"Chicago, November 30, 1895.

Messrs. Jacob Miller & Son, Philadelphia.

Gentlemen: Your favor of the 26th inst. is at hand. I am one of the trustees who have the affairs of Stein & Brodeck in charge, and all orders before being shipped should receive my O. K. I do not understand how you can ship goods to them under the circumstances as you did this bill, without having my consent to do so. You will please not do it again, with orders for next spring delivery, before having my O. K. on them, and it will be better for you not to consider them as ordered until then. The arrangement is that I am to know what goods they buy, and the bills are then paid by me as trustee; and while I consider the account all right now, as we are doing all we can to help them to pay their old debts in full, you have no right to send them any goods unless you first confer with me. The

bills that they are owing now that you ship will not be
discounted promptly, as there is no money on hand to do it
with; but when your turn comes for payment you will no
doubt receive the money as quickly as any of the other
parties whom the goods were bought from.

Yours truly,

Louis H. Kohn."

The letter of December 28, 1893, is evidence that Kohn
paid the bills for goods shipped to Stein & Brodeck. He
sent a check and requested a receipt sent to him. Leon
Freedman, bookkeeper of appellees, also testified that
appellees' bills, except those sued for, were paid by Kohn.
In appellant's letter of November 30, 1895, he writes: "All
orders, before being shipped, should receive my O. K." In
this letter he also approves the purchases referred to in
appellees' letter of November 26th, which are the purchases
in suit, saying: "I consider the account all right now."
About the end of the year 1895, appellant, as he testified,
directed attorneys in Everett to have the stock sold out.
This was done. The proceeds of goods sold by Stein &
Brodeck, and also the proceeds of the sale of the entire
stock, as directed by appellant, were deposited with the
banking firm of Stein, Ederheimer & Co., of which firm
appellant was a member. An account was kept on the
books of the firm in the name of Louis H. Kohn, trustee,
and shows a balance to his credit, as trustee, of $1,482.31,
and appellant, himself, testified on the trial, that there was
on deposit with the firm of Ederheimer & Co., subject to
his order and control, "some $1,500," proceeds of the sale
of goods formerly of Stein & Brodeck. The evidence tends
to show that duplicates of bills of goods shipped to Stein &
Brodeck were sent to appellant. If appellant, under the
arrangement between the creditors, had power to authorize
purchases, as his letter of November 30, 1895, and his own
testimony show he had, then he had power to ratify a pur-
chase, and his ratification would relate back and operate,
in law, as a prior authority. His letter of November 30th
is clearly a ratification of the purchase of the goods for
the price of which the suit was brought.

Appellant claims that credit for the goods was not given to him, and in support of this, relies on appellees' books, which show the account in the name of Stein & Brodeck. If goods are charged to A, on the books of the vendor, this raises a presumption that credit was given A, but such presumption may be rebutted by evidence and the circumstances of the case. In the present case appellees knew that the stock of goods of Stein & Brodeck had been taken possession of under a chattel mortgage which had subsequently been released, and that by an arrangement between creditors, other than themselves, control of the business, formerly of Stein & Brodeck, had been transferred to appellant and Charles Stein. Under these circumstances it would seem absurd to suppose that credit was given to Stein & Brodeck for the goods in question. In appellant's letter to appellees of December 23, 1893, he writes: "Creditors here * * * had Charles Stein release his mortgage and place affairs in the hands of myself and Charles Stein as trustees for creditors;" and in his letter of January 6, 1894, he writes: "This business is in the hands of Charles Stein and L. H. Kohn, trustees." Appellees having been thus informed in December, 1893, and January, 1894, is it credible that they credited Stein & Brodeck in July and September, 1895? Becker testified that he represented the appellees, for their attorney; that in the early part of 1896 he presented to appellant an itemized statement of appellees' account, amounting to $620 (the amount of the bills in question); that appellant said he would have to investigate, to ascertain whether it was correct, and, at a second interview, said it was correct and would be paid. Appellant admitted, in his testimony, that Becker saw him in regard to the claim of appellees, but says he don't think he, Becker, had a written account with him; that other parties saw him in regard to claims, and he told them that as the money came in it would be distributed equally among them all; and that what he said to Becker would be the same thing. He did not assume to testify as to just what he said to Becker. It does not appear from the evidence that Taylor

ever did anything about the business, and it would seem from the evidence of Charles Stein, who was not a trustee when the bills sued on were contracted, that he, Stein, did little or nothing. To reverse the finding of the trial court on the ground of being contrary to the evidence, we would have to hold that it is manifestly against the weight of evidence, which we can not do. It would seem that appellant can suffer no loss by the judgment. According to his own testimony, given December, 1899, there was then $1,500 to his credit, as trustee, on the books of his firm; the business was closed and all the remainder of the stock, formerly of Stein & Brodeck, sold about the end of the year 1895, and it seems extremely probable that the amount on deposit is a surplus above the indebtedness of Stein & Brodeck to the creditors who entered into the trust arrangement. These creditors were apparently active in promoting what they deemed their interests, and on the hypothesis that appellant has performed his duty as trustee, which he will hardly deny, the assumption must be that all creditors assenting to the trust arrangement have been paid.

We find no reversible error in the record, and are of opinion, from inspection of the entire record, that substantial justice has been done. The judgment will be affirmed. A motion made by appellees to strike the bill of exceptions from the record was reserved. The motion will be overruled. Affirmed.